UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Joseph Hammerschmidt and Edward Jackson, *individually and on the behalf of all others similarly situated*,

Plaintiffs,

v.

General Motors LLC,

Defendant.

Civil No. 20-1773 (DWF/BRT)

MEMORANDUM OPINION AND ORDER

Brant D. Penney, Esq., and Garrett D. Blanchfield, Jr., Esq., Reinhardt Wendorf & Blanchfield; Charles Williams, Esq., Williams & Skilling, P.C.; and Danielle L. Manning, Esq., and Marc L. Godino, Esq., Glancy Prongay & Murray LLP; and Mark Greenstone, Esq., counsel for Plaintiff.

Archis A. Parasharami, Esq., Daniel Jones, Esq., John Nadolenco, Esq., and Marjan A. Batchelor, Esq., Mayer Brown LLP, counsel for Defendant.

INTRODUCTION

This matter is before the Court on Defendant General Motors, LLC's ("GM" or "Defendant") Motion to Dismiss Consolidated Class Action Complaint for Failure to State a Claim (Doc. No. 90) and Motion to Strike Nationwide Class Allegations in Consolidated Class Action Complaint (Doc. No. 96). For the reasons below, the Court grants the motion to dismiss and denies the motion to strike as moot.

## BACKGROUND

This lawsuit relates to an alleged defect in the "right front passenger airbag on-off indicator light"[1] in Plaintiffs' respective vehicles.[2] (Compl. ¶¶ 20, 24.) According to the allegations in the Complaint[3], both Plaintiff Joseph Hammerschmidt ("Hammerschmidt") and Plaintiff Edward Jackson ("Jackson") purchased Chevrolet Camaros designed and manufactured by GM. (*Id*. ¶¶ 16, 22, 28.) Hammerschmidt purchased a 2010 Chevrolet Camaro from a third party, Summit Auto & Cycle, in Zumbrota, Minnesota on September 20, 2016, and Jackson purchased a 2011 Chevrolet Camaro from Dudley Martin Chevrolet in Manassas, Virginia in January 2012. (*Id*. ¶¶ 16, 22.) GM provided a warranty on both Vehicles.[4]

---

[1]     The Court refers to the "right front passenger airbag on-off indicator light" as the "airbag indicator light."

[2]     The Court refers to each Plaintiff's respective car as their "Vehicle" and to the cars collectively as the "Vehicles."

[3]     The operative Complaint here is the Consolidated Class Action Complaint (Doc. No. 87 ("Compl.").) This is the third-amended complaint filed by Plaintiffs. (*See* Doc. Nos. 1, 40, 67.)

[4]     The New Vehicle Limited Warranty reads, in relevant part:

> **What Is Not Covered**
> **. . .**
> **Any implied warranty of merchantability or fitness for a particular purpose applicable to this vehicle is limited in duration to the duration of this written warranty.  Performance of repairs and needed adjustments is the exclusive remedy under this written warranty or any implied warranty.  GM shall not be liable for incidental or consequential damages, such as, but not limited to, lost wages or vehicle rental expenses, resulting from breach of this written warranty or any implied warranty.***

Hammersmith alleges that around March 2019, the airbag indicator light in his Vehicle "began to malfunction—reading 'OFF' even when an adult passenger was seated." (*Id*. ¶ 20.) Jackson alleges the same occurred in his Vehicle around May 2019. (*Id*. ¶ 24.) Hammerschmidt alleges that he took his car to a third-party repair shop, where they ran a diagnostic and found "error codes" that were the subject of a Technical Service Bulletin ("TSB")[5] that was issued by GM in September 2010. (*Id*. ¶¶ 20, 24 & Ex. 1 ("September 2010 TSB").) Jackson alleges that he took his Vehicle to a Chevrolet dealer in November 2020, where they ran a diagnostic and found a "Diagnostic Trouble Code" that was the subject of the September 2010 TSB. (*Id*. ¶ 24 & September 2010 TSB.)

The September 2010 TSB states, in relevant part:

**Condition/Concern**

Some customers may comment on the SIR/Airbag indicator/light on in the instrument panel cluster (IPC). Upon further investigation, the technician may find DTCs B0074 and B0081 set.

**Recommendation/Instructions**

**Important:** DO NOT replace the passenger presence system (PPS) module or sensing diagnostic module (SDM) or attempt to reprogram the SDM for this concern.

---

*Some states do not allow limitations on how long an implied warranty will last or the exclusion or limitation of incidental or consequential damages, so the above limitations or exclusions may not apply to you.

(Doc. No. 53, Exs. 1 & 2 at 7-10.)

[5] A TSB informs authorized service technicians about pervasive issues affecting particular models and model years of cars.

3

[image omitted]

The PPS pad may have a tear (1) in the sensor circuit where the plastic push pins/retainers are pressed into the seat frame as shown above.  If this condition is discovered, replace the PPS sensor. . . .

(September 2010 TSB.)[6]

Although no tear in the sensor circuit was discovered, Hammerschmidt alleges that the third-party repair shop recommended replacement of the PPS sensor pad for an estimated $959.82, but that he declined because of the cost.  (*Id*. ¶ 20.)  Jackson alleges that a tear was discovered in the sensor in his Vehicle, and that he replaced it at the cost of $967.55.  (*Id*. ¶ 24.)  Both Vehicles were "out of warranty" when the airbag indicator light issues arose.  (*Id*. ¶¶ 20, 25.)

In September 2010, GM introduced a redesigned PPS pad intended to prevent push-pin interference with the sensors.  (*Id*. ¶ 38.)  Because Plaintiffs' Vehicles were manufactured before the redesign, they were not upgraded.  (*Id*.)

In the Complaint, Plaintiffs cite to numerous consumer complaints filed with the National Highway Traffic Safety Administration ("NHTSA") regarding issues with the airbag indicator light, but Plaintiffs do not allege that the NHTSA has issued a recall or otherwise acted on the complaints.  (*Id*. ¶¶ 5, 46-48.)

---

[6]     Plaintiffs attach the September 2010 TSB to their Complaint.  (*See* Compl. ¶ 24, Ex. 1.)  The Complaint, however, does not attach a March 2010 Service Bulletin that is mentioned in the Complaint.  (*See id*. ¶ 42; Doc. No. 93, Ex. 3 ("March 2010 SB").)  Because the March 2010 SB is incorporated by reference in the Complaint, it is properly considered by the Court.

4

Plaintiffs bring the following causes of action: Violation of the Minnesota Consumer Fraud Act, Minn. Stat. §§ 325.68 *et seq*. ("MCFA") (Count One); Violation of the Minnesota False Statement in Advertising Act, Minn. Stat. §§ 325 F.67 *et seq*. ("MFSAA") (Count Two); Violation of the Minnesota Unfair and Deceptive Trade Practices Act, Minn. Stat. §§ 325D.44 *et seq*. ("MUDTPA") (Count Three); Breach of Implied Warranty of Merchantability, Minn. Stat §§ 336.314 *et seq*. (Count Four); Violation of Virginia's Consumer Protection Act, Va. Code Add. §§ 59.1-196, *et seq*. (Count Five); Breach of Implied Warranty of Merchantability, Va. Code Ann. § 8.2-314 (Count Six); Breach of Implied Warranty of Merchantability Under the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq*. (Count Seven); and Fraudulent Omission (Count Eight). Plaintiffs also propose the creation of a nationwide class (excluding California), and Minnesota and Virginia subclasses, of individuals who purchased or leased 2010 or 2011 Camaros.

GM now brings two separate motions. First, GM moves to dismiss the Complaint for failure to state a claim. In short, GM argues that in each count, Plaintiffs allege that GM knew but failed to disclose an "Airbag Defect" in their Vehicles, namely a defect in its airbag systems that causes the airbag indicator light to be off when an adult is seated, "*such that the passenger airbag will not deploy in the event of an accident*." (Compl. ¶ 2 (emphasis added).) GM asserts that Plaintiffs' lawsuit is based on speculation about risks that have never materialized and underscores that Plaintiffs do not allege an instance in which the airbag in either Vehicle or any other 2010 or 2011 Camaro failed to deploy. Second, GM moves to strike the nationwide class allegations in the Complaint.

5

## DISCUSSION

### I.  Motion to Dismiss

In deciding a motion to dismiss under Rule 12(b)(6), a court assumes all facts in the complaint to be true and construes all reasonable inferences from those facts in the light most favorable to the complainant. *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986).  In doing so, however, a court need not accept as true wholly conclusory allegations, *Hanten v. Sch. Dist. of Riverview Gardens*, 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions drawn by the pleader from the facts alleged, *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990).  A court deciding a motion to dismiss may consider the complaint, matters of public record, orders, materials embraced by the complaint, and exhibits attached to the complaint. *See Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999).

To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level." *Id.* at 555.  As the Supreme Court reiterated, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not pass muster under *Twombly*. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).  In sum, this standard "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim]." *Twombly*, 550 U.S. at 556.

In addition to the pleading standard explained by the Supreme Court in *Twombly* and *Iqbal*, Federal Rule of Civil Procedure 9(b) requires "particularity" when pleading "fraud or mistake." Fed. R. Civ. P. 9(b). Rule 9(b) serves to deter suits filed for purpose of discovering unknown wrongs and to enable a defendant to understand a plaintiff's claim and effectively prepare a defense. *See Parnes v. Gateway 2000, Inc.*, 122 F.3d 539, 549 (8th Cir. 1997). To satisfy Rule 9(b), "the complaint must plead the 'who, what, where, when, and how' of the alleged fraud.'" *Drobnak v. Andersen Corp.*, 561 F.3d 778, 783 (8th Cir. 2009) (citation omitted). "Conclusory allegations that a defendant's conduct was fraudulent and deceptive are not sufficient to satisfy the rule." *Schaller Tel. Co. v. Golden Sky Sys., Inc.*, 298 F.3d 736, 746 (8th Cir. 2002) (citation omitted).

### A.     Fraud-Based Claims

Plaintiffs have alleged several claims based on a theory of fraud-by-omission. At the heart of these claims is the allegation that GM failed to disclose the potential for an issue with their Vehicle's airbag indicator light, of which GM had exclusive or superior knowledge, prior to selling the Vehicles, and further that the issue with the airbag indicator light is "necessarily a safety defect." Specifically, Plaintiffs allege that when the airbag indicator light is off, "the passenger airbag will not deploy in the event of an accident" (Compl. ¶ 2), and that the airbag indicator defect "can cause the front passenger frontal airbag to fail to deploy when it otherwise should" (*id*. ¶ 34).

Plaintiffs assert claims for common law fraud under both Minnesota and Virginia law.[7] Plaintiffs allege that: (1) GM knew or should have known that the Vehicles and their airbag systems were defective, would fail, and were not suitable for their intended use; (2) GM had a duty, but failed, to disclose the defect; and (3) as a result, Plaintiffs suffered actual damages. GM argues that Plaintiffs' fraud-by-omission claims should be dismissed, primarily because there was no duty to disclose.

Under the common law, a party to a transaction generally "has no duty to disclose material facts to the other party." *Graphic Commc'ns Local 1B Health & Welfare Fund A. v. CVS Caremark Corp.*, 850 N.W.2d 682, 695 (Minn. 2014) (citation omitted); *see also Farley v. Bank of Am., N.A.*, Civ. No. 14-568, 2015 WL 3651165, at *7 (E.D. Va. June 11, 2015) (fraudulent concealment requires evidence of a duty to disclose). Special circumstances may trigger such a duty to disclose material facts, including (1) a person who has a confidential fiduciary relationship with the other party, (2) a person who has special knowledge of material facts to which the other party does not, and (3) a person who speaks must say enough to prevent the words communicated from misleading the other party. *See Graphic Commc'ns*, 850 N.W.2d at 695; *see also Fleece v. HCA Va. Health Sys.*, Civ. No. 19-396, 2020 WL 7265851, at *3 (E.D. Va. Dec. 10, 2020) (citation omitted) (recognizing three circumstances that create a duty under Virginia law—the existence of a fiduciary duty, independent legal duty, or statutory duty). "If such a duty

---

[7] In addition, alleged fraudulent omissions form the basis of Plaintiffs' consumer protection claims (Counts One, Two, Three, and Five). Thus, this analysis applies to all fraud-related claims.

is shown, concealment is fraudulent if a party conceals a fact material to the transaction and peculiarly within its knowledge, knowing that the other party acts on the presumption that no such fact exists." *Baer Gallery, Inc. v. Citizen's Scholarship Found. of Am., Inc.*, 450 F.3d 816, 821 (8th Cir. 2006).

Plaintiffs argue that materiality alone can create a duty to disclose.  (Doc. No. 105 at 8-10 & n.2.)  The Court disagrees and, instead, finds that under the relevant case law, Plaintiffs must demonstrate both that the omission was material *and* that GM had a duty to disclose that material information.  *See Graphic Commc'ns*, 850 N.W.2d at 697 n.11; *Fleece*, 2020 WL 7265851, at *3; *Bank of Montreal v. Signet Bank*, 193 F.3d 818, 827, 834 (4th Cir. 1999) (applying Virginia law) ("Silence does not constitute concealment in the absence of a duty to disclose.").[8]

Plaintiffs argue that they have sufficiently alleged claims for fraudulent omission because, coupled with technical allegations concerning how the passenger airbag systems function, they have alleged GM's superior presale knowledge of the alleged safety-related defect.  (*See* Compl. ¶¶ 74(a), 90(a), 107(a), 134(a), and 164(a).)  To show GM's

---

[8]     The Court recognizes that some courts applying Minnesota law and interpreting the Consumer Fraud Act have suggested that an omission-based CFA claim is actionable absent a duty to disclose if the omission is material, under the reasoning that consumer protection statutes are broader than common-law fraud and would support omissions as violations.  *See, e.g., Minn. ex rel. Hatch v. Fleet Mortg. Corp.*, 158 F. Supp. 2d 962, 967 (D. Minn. 2001); *Khoday v. Symantec Corp.*, 858 F. Supp. 2d 1004, 1018 n.17 (D. Minn. 2012).  However, the Minnesota Supreme Court's decision in *Graphic Commc'ns* was decided after, and expressly disagreed with, both *Minn. ex rel Hatch* and *Khoday* on this point.  *See Graphic Commc'ns*, 850 N.W.2d at 697 n.11 ("To the extent that these decisions suggest that a CFA claim may be based on a material omission, without more, we disagree.  Instead, the omission must be material *and* there must have been special circumstance that triggered a duty to disclose.").

9

knowledge, Plaintiffs rely on GM's 2009/2010 quality alert (Compl. ¶¶ 3), the fact that GM introduced a redesigned seat pad to prevent push-pin interference with the sensor pad but did not upgrade the PPS sensor pads in vehicles already produced (*id*. ¶ 38), and the fact that GM published a TSB acknowledging that the PPS pad may have a circuit tear and should be replaced if it is torn (*id*. ¶ 43). In addition, Plaintiffs allege that when they brought their Vehicles in for servicing because of a malfunctioning airbag indicator light, they were both told they needed to replace the PPS seat pad. (*Id*. ¶¶ 20, 24.) Underlying these allegations is the central contention that a safety defect existed, namely that a malfunction of the airbag indicator light "indicat[es] that the airbag will not deploy in a crash." (*Id*. ¶¶ 4, 34.)

GM argues that these allegations fail to allege the requisite presale knowledge of the alleged defect to support a claim for fraudulent omission. Specifically, GM argues that neither the 2009-2010 quality alert nor the September 2010 TSB demonstrate GM's knowledge of the alleged safety defect.[9] The Court agrees.

---

[9] In their opening brief, GM argues that Plaintiffs' vague references to GM's testing and citation of NHTSA postings are insufficient to establish presale knowledge. (Doc. No. 92 at 11-12.) Plaintiffs, however, did not respond to these arguments in the context of them being evidence of presale knowledge, and instead base their claim on the facts outlined above. (Doc. No. 105 at 10-11.) Even if Plaintiffs had addressed these arguments, a review of the Complaint reveals that the allegations related to testing and NHTSA postings would not support a reasonable inference that GM had presale knowledge of the alleged defect.

Plaintiffs do argue that the NHTSA complaints support an inference that the alleged airbag indicator light defect is safety-related because numerous complaints tie the airbag warning lights to PPS sensor pad failure and some include the same diagnostic trouble codes found in Plaintiffs' vehicles. The Court disagrees. These postings do not

A showing of presale knowledge of an alleged defect is required to state a claim for fraudulent omission. *See, e.g.*, *Hall v. General Motors, LLC*, Civ. No. 19-10186, 2020 WL 1285636, at *3 (E.D. Mich. March 18, 2020). The September 2010 TSB noted the concern that some customers may find that their cars' airbag indicator lights remain on, but notably it does *not* call for replacement of the PPS or SDM module. Instead, the TSB advises that the PPS pad *may* have a tear and *if* such a tear is found by a technician, then the PPS sensor should be replaced. (*See* September 2020 TSB.) In addition, the TSB does not indicate that a torn PPS sensor could cause the airbag itself to fail to deploy. The TSB identified a condition—a malfunctioning airbag indicator light—but it does not identify the "safety risk" that forms the basis of Plaintiffs' claims, namely that the malfunctioning light will cause airbags to fail to deploy.[10] Thus, Plaintiffs have not sufficiently alleged that GM had presale knowledge of such a hazard. GM's knowledge of the airbag indicator light condition does not, based on the pleadings, support an inference of presale knowledge of the alleged safety-related defect that would trigger a duty to disclose.

Plaintiffs point out that while the court in *Hall v. General Motors* found that TSBs related to an alleged StabiliTrak steering system defect were not sufficient to show presale knowledge on the part of the manufacturer, the court distinguished the September

---

support an inference that an issue with the airbag indicator light will cause the airbag to fail to deploy.

[10]   Similarly, the earlier TSBs mentioned in the Complaint reference possible airbag light malfunction and related recommendations, but not a potential issue with airbag deployment. (Compl. ¶¶ 40, 42.)

11

2010 TSB at issue here as it was considered in *Bryde v. General Motors, LLC*, Civ. No. 16-2421, 2016 WL 6804584 (N.D. Cal. Nov. 17, 2016).  The court in *Hall* specifically discussed the *Bryde* case, which involved claims against GM that survived a motion to dismiss and related to the same alleged airbag defect at issue here.  The court in *Hall* stated that "the TSB in *Bryde* directly concerned the failure of the airbag to engage – the precise defect the plaintiffs had complained about."  *Hall*, 2020 WL 1285636, at *6.  However, the Court disagrees with the characterization of the September 2010 TSB in *Bryde*.  Instead, here the Court finds that Plaintiffs have not demonstrated that the September 2010 TSB concerns the safety hazard at the heart of the alleged defect -- the failure of the airbag to engage.  Again, while the TSB might suggest that GM was on notice of the potential for some PPS pads to tear, the allegations do not support the inference that GM had knowledge of a risk that the airbags might not deploy.  In addition, the fact that there is no evidence that the alleged safety risk (undeployed airbags) ever occurred weighs against any reasonable inference supporting GM's presale knowledge.  *See, e.g., Smith v. General Motors LLC*, 988 F.3d 873, 881, 885 (6th Cir. 2021) ("[W]hile the complaints might have put GM on notice about the cracked dashboard, they did not create knowledge about the safety risk alleged by Plaintiffs.  That is especially true because the alleged airbag malfunction has never occurred.").  Put simply, Plaintiffs have failed to sufficiently allege that an issue with the airbag indicator light is the equivalent to a safety issue with the airbags themselves or that GM had presale knowledge of any safety implications related the indicator light defect.

For the above reasons, assuming all facts in Plaintiffs' Complaint to be true, and construing all reasonable inferences in the light most favorable to Plaintiffs, the Court concludes that Plaintiffs have failed to plead a plausible claim for fraud by omission under common law and the asserted consumer protection statutes.[11]  Therefore, Counts One, Two, Three, Five and Eight are properly dismissed.

### B. Implied-Warranty Claims

Plaintiffs assert implied-warranty claims under Minnesota and Virginia law, as well as under the Magnuson-Moss Warranty Act.  Plaintiffs allege that GM impliedly warranted that the Vehicles were of merchantable quality and fit for the ordinary purposes for which they were sold, including a warranty that the Vehicles and their airbag systems were safe and reliable and fit for their intended use while the vehicles were being operated.  Moreover, Plaintiffs allege that the Vehicles were not fit for the ordinary purpose of providing reasonably reliable and safe transportation because they suffer from the alleged airbag defect that can put the lives of occupants at risk.  Plaintiffs assert that GM was provided notice and, alternatively, any attempt to provide notice would have been futile because of GM's steadfast denial of the existence of an airbag defect.

---

[11]   GM makes additional arguments for why Plaintiffs' fraud-based claims fail.  For example, GM argues that:  Hammerschmidt purchased his Vehicle from a third-party and, therefore, GM had no duty to disclose; Plaintiffs' allegations fail to satisfy Rule 9(b)'s heightened pleading standards; Plaintiffs fail to raise an inference that facts related to the alleged airbag indicator light was peculiarly within the knowledge of GM; and the Complaint fails to state claims under MFSAA and MUDTPA for separate reasons.  Because Plaintiffs' fraud-based claims are properly dismissed for the reasons discussed above, the Court does not reach these additional arguments.

GM argues that Plaintiffs' claim for breach of implied warranty should be dismissed because Plaintiffs failed to plausibly allege pre-suit notice, GM validly disclaimed any implied warranty that extended beyond the duration of the express warranty, and Plaintiffs have failed to plausibly allege that the Vehicles are unfit for their ordinary purpose.

An implied warranty of merchantability requires that the goods be "fit for the ordinary purposes for which the goods are used." Minn. Stat. § 336.2-314(1)(c); Va. Code § 8.2-314(1)(c) (same). Under both Minnesota and Virginia law, to bring a breach of warranty claim, a plaintiff must "notify the seller of the breach or be barred from any remedy." *Wheeler v. Subaru of Am., Inc.*, 451 F. Supp. 3d 1034, 1037 (D. Minn. Apr. 1, 2020) (quoting Minn. Stat. § 336.2-607(3)(a)); *Kerr v. Hunter Div.*, 32 Va. Cir. 497, 1981 WL 394232, at *8 (Va. Cir. Ct. Feb. 23, 1981) (citing Va. Code § 8.2-607(3)(a).) Notice must be provided before a plaintiff brings suit. *See Wheeler*, 451 F. Supp. 3d at 1037 ("Minnesota courts have required this notice to be provided before the plaintiff brings the suit."); *Kerr*, 1981 WL 394232, at *8 (filing of suit cannot serve as first notice).

Pre-suit notice is important because it "informs the seller that the transaction is claimed to involve a breach, and thus opens the way for normal settlement through negotiation." *Drobnak*, 561 F.3d at 784 (quoting Minn. Stat. § 336.2-607(3)(a), U.C.C. cmt. 4). Notice provides the seller the opportunity to: (1) correct any defect; (2) prepare

for negotiation and litigation; and (3) investigate the claims independently "while the products remain in a relatively pristine state." *Id.*[12]

Plaintiffs argue that they have provided sufficient notice and, alternatively, that providing notice would have been futile. (Compl. ¶¶ 20, 124.) Plaintiffs argue that GM had notice of the alleged defect, even absent Plaintiffs giving notice, because GM had knowledge of the alleged airbag defect.[13] Plaintiffs rely on the quality alert issued in late 2009 or early 2010, the September 2010 TSB, and the fact that GM introduced a redesigned PPS pad intended to prevent push-pin interference with the sensors. (Compl. ¶¶ 36-38.)[14] Plaintiffs also argue that the pre-suit notice requirement was satisfied by filing this lawsuit and by way of a prior litigation filed by different plaintiffs against GM in the *Bryde* case.

GM argues that Plaintiffs cannot avoid the pre-suit notice requirements and have not sufficiently alleged such notice. The Court agrees. Plaintiffs have not alleged any

---

[12] Courts recognize that notice suffices so long as it "let[s] the seller know that the transaction is still troublesome and must be watched." *Drobnak*, 561 F.3d at 784 (citing Minn. Stat. § 336.2-607(3)(a), U.C.C. cmt. 4). And while "[t]he bar for sufficiency is low," is it nevertheless important because of the purposes it serves. *Id*.

[13] In support, Plaintiffs rely on the arguments made regarding GM's presale knowledge of the alleged safety defect.

[14] Plaintiffs further allege, on information and belief, that the quality alert was issued because a tear in the sensor will cause the airbag to be disabled when it should be on, placing the passenger in danger in the event of a crash. (*Id.* ¶ 37.) As discussed above, Plaintiffs' allegations do not raise a reasonable inference that an airbag indicator light malfunction or a possible tear in the PPS pad tear will result in an airbag deployment malfunction.

15

communication with GM prior to initiating the present lawsuit.[15] The fact that different plaintiffs filed a separate lawsuit does not satisfy the requirement that Plaintiffs, as the buyers, notify GM of the alleged breach of warranty. *See* Minn. Stat. § 336.2-607(3)(a) ("the *buyer* must . . . notify the seller of breach or be barred from any remedy") (emphasis added); Va. Code § 8.2-607(3)(a) (same). The Court agrees with the reasoning in *Budach v. NIBCO, Inc.*, Civ. No. 2:14-4324, 2015 WL 6870145, at *5 (W.D. Mo. Nov. 6, 2015) (explaining that under the Missouri UCC, "notice is not simply an event that must occur prior to litigation . . . it is an obligation that the buyer himself carries"). Therefore, the *Bryde* case does not constitute sufficient notice of these Plaintiffs' lawsuit. *See, e.g.*, *Drobnak*, 561 F.3d 784-85. Because Plaintiffs' Complaint fails to allege sufficient notice, their breach of implied warranty claims (Counts Four, Six and Seven) are properly dismissed.

---

[15] Jackson alleges that he provided notice because he took his Vehicle to an authorized Chevrolet dealership (Ted Britt Chevrolet) after he saw the "Service Airbag" alert. (Compl. ¶¶ 22, 24, 55.) Jackson, however, has not alleged any facts showing that he provided sufficient notice of his claims or that he provided notice to the immediate seller of his Vehicle (Dudley Martin Chevrolet) or GM. *See, e.g., Christian v. Sony Corp. of Am.*, 152 F. Supp. 2d 1184, 1188 (D. Minn. 2001) (holding that warranty claims fail because plaintiff did not give "notice of any sort that they intended to assert a warranty claim"); *see also, e.g.*, *Brookings Mun. Utilities, Inc. v. Amoco Chem. Co.*, 103 F. Supp. 2d 1169, 1176 (D.S.D. 2000) (explaining that a majority of courts require notice to the immediate seller). The notice of the alleged breach of warranty is more than just notice of the facts of the airbag indicator light malfunction. *See Drobnak*, 561 F.3d 784-85. And Plaintiffs, here, do not allege any communication with GM or an immediate seller of the belief that GM was in breach of its warranty.

The parties make additional arguments regarding Plaintiffs' breach of warranty claims.  However, because the failure to give adequate notice is dispositive to those claims, the Court does not reach those issues.

**II.     Motion to Strike**

Because the Court dismisses the Complaint in its entirety for the reasons above, GM's motion to strike is moot.

## CONCLUSION

Plaintiffs have been afforded the opportunity to amend its complaint, the present Complaint being the fourth filed in this action.  Therefore, the claims are dismissed with prejudice.

## ORDER

Based on the files, records, and proceedings herein, and for the reasons stated above, **IT IS HEREBY ORDERED** that:

1.     GM's Motion to Dismiss Consolidated Class Action Complaint for Failure to State a Claim (Doc. No. [90]) is **GRANTED**.

2.     Plaintiffs' claims in the Consolidated Class Action Complaint (Doc. No. [87]) are **DISMISSED WITH PREJUDICE**.

3.     GM's Motion to Strike Nationwide Class Allegations in Consolidated Class Action Complaint (Doc. No. [96]) is **DENIED AS MOOT**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:  February 3, 2022                    s/Donovan W. Frank
                                            DONOVAN W. FRANK
                                            United States District Judge